IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBI L. S., <br><br>  Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of Social Security, <br><br>  Defendant. | NO. SACV-24-01977-AGR <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff[1] filed this action on September 13, 2024. The parties filed briefs on the disputed issues. The court has taken the matter under submission without oral argument.[2]

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 6, 7.)

1

## I.

## **PROCEDURAL HISTORY**

On March 24, 2022, Plaintiff filed an application for disability insurance benefits and alleged an onset date of May 27, 2021. Administrative Record ("AR") 18. The application was denied initially and upon reconsideration. AR 18, 99, 116. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On November 29, 2023, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified. AR 69-98. The ALJ issued a decision denying benefits on January 31, 2024. AR 15-30. The Appeals Council denied review on July 24, 2024. AR 1-6. This action followed.

## II.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. *Smith v. Berryhill*, 587 U.S. 471, 474 (2019). The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam).

"Substantial evidence" means "'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016).

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

The ALJ found that Plaintiff meets the insured status requirements through December 31, 2027. AR 3867. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3] the ALJ found that Plaintiff has the severe impairments of fibromyalgia, left shoulder adhesive capsulitis and osteoarthritis; left wrist strain; bilateral knee chondromalacia and degenerative joint disease; mild cervical and lumbar degenerative joint disease; and sleep apnea. AR 20. Plaintiff's impairments do not meet or medically equal the severity of a listed impairment. AR 3868.

The ALJ found that Plaintiff has the residual functional capacity to perform light work except that she can lift/carry 20 pounds occasionally and 10 pounds frequently; sit/stand/walk for six hours in an eight-hour workday; occasionally push/pull with the bilateral lower extremities; occasionally climb stairs/ramps, balance, stoop, kneel, crouch, and crawl; and frequently handle/finger with the left hand. She can never reach overhead and occasionally reach in other directions with the left arm; and has no limitations with the right arm. She requires a cane to

---

[3] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

ambulate distances greater than six feet.  She is precluded from climbing ladders, ropes and scaffolds; walking on uneven terrain; hazards such as dangerous moving machinery; and unprotected heights.  AR 24.

The ALJ determined that Plaintiff can perform her past relevant work as a paraeducator (teacher aide I) as generally performed.  AR 29-30.  Plaintiff, therefore, was not under a disability within the meaning of the Social Security Act from the onset date of May 27, 2021 through the date of the ALJ's decision on January 31, 2024.  AR 30.

### C. Medical Source Opinions

Plaintiff argues that the ALJ erred in discounting the opinions of Dr. Chuang and Dr. Ing.

When considering a medical source opinion, an ALJ evaluates several factors:  (1) supportability; (2) consistency with other evidence; (3) relationship with the claimant; (4) specialization; and (5) other factors.  20 C.F.R. § 404.1520c(c)(1)-(5); *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022) (applying new regulations to claims filed after March 27, 2017).  The first two factors are more important.  20 C.F.R. § 404.1520c(b)(2).  "An ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Woods*, 32 F.4th at 792.

#### 1. Dr. Chuang

Dr. Chuang conducted a consultative orthopedic examination on February 15, 2023.  AR 622-27.  The ALJ acknowledged that Plaintiff's clinical findings during Dr. Chuang's examination reflected a deterioration in her residual functional capacity as compared to previous examinations.  AR 27.

Dr. Chuang noted diffuse tender points consistent with fibromyalgia and diffuse tenderness all over her body that corresponded to polymyalgia with focus muscle pain.  AR 623.  Plaintiff was right-handed.  She walked with a mild limp and antalgia, and had difficulty with squat and rise.  She used a cane for walking

more than six feet. AR 623-24. Her cervical spine showed paraspinal tenderness and positive Spurling test bilaterally; thoracic spine showed paraspinal tenderness and 20-degree kyphosis; and lumbar spine showed paraspinal tenderness, moderate weakness due to pain during flexion and extension; and positive straight leg raise bilaterally. Her left shoulder showed crackles and tenderness, positive impingement sign and positive cross arm adduction test. Her right shoulder showed crackles and tenderness, but full range of motion, negative impingement sign, negative cross arm adduction test, and no instability. Her left elbow and left wrist showed crackles and tenderness, with limited range of motion in the left wrist. Her right wrist had painless full range of motion. AR 624. Her left hand showed moderate swelling and tenderness that impaired manipulation; and her right hand showed mild swelling and tenderness that impaired manipulation. She had full range of motion in her fingers and full abduction and adduction of her thumbs. Her grip strength was 24 pounds on the right and 10 pounds on the left. Her hips and knees showed crackles and tenderness bilaterally. Her motor strength showed moderate weakness (4/5) in her left arm and mild weakness (4+/5) in her right arm and both legs. AR 625.

Dr. Chuang opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently with her free hand; sit/stand/walk six hours in an eight-hour workday; occasionally push/pull with her left arm with no overhead reaching; occasionally use her left hand for fine and gross manipulations; frequently push/pull with her right harm with frequent overhead reaching; frequently use her right hand for fine and gross manipulation; and occasionally bend, crouch, stoop, and crawl. She required a cane for walking more than six feet and could not walk on uneven terrain, climb ladders, or work at heights. AR 626.

The ALJ concluded that Dr. Chuang's opinion that Plaintiff was limited to occasional fine and gross manipulation with the left arm/hand to be "overly restrictive in light of the claimant's negative electrodiagnostic results." AR 27. Otherwise, Dr. Chuang's opinions were "well supported by the treatment records

5

and the examination findings." AR 28.  In rejecting Dr. Chuang's limitations as to Plaintiff's left arm/hand, the ALJ presumably refers to the negative electrodiagnostic results in December 2021, over one year before Dr. Chuang's examination in February 2023.  AR 676.  The ALJ, however, acknowledged that Plaintiff's clinical findings on examination in February 2023 indicated deterioration in her residual functional capacity.  AR 27.  At the consultative internal medicine examination in July 2022, Dr. Hasan opined that Plaintiff could frequently perform gross and fine manipulation with the left hand.  AR 597.  The earlier electrodiagnostic tests in December 2021 do not constitute substantial evidence supporting the ALJ's decision to discount Dr. Chuang's February 2023 opinions.

      Nevertheless, the error is harmless.  Accepting Dr. Chuang's opinions, Plaintiff would not be able to perform her past relevant work with her left arm because Teacher Aide I requires frequent handling and reaching.  DOT 099.327-010.  The vocational expert testified that the use of a cane is not disabling because the job of Teacher Aide I can be performed with one hand as generally performed.  AR 94.  Dr. Chuang opined that Plaintiff could perform frequent push/pull, reaching, fine manipulation, and gross manipulation with her right upper extremity.  AR 626.  Therefore, the ALJ's error in rejecting Dr. Chuang's opinions about Plaintiff's left arm/hand was "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012).

      **2.**    <u>**Dr. Ing**</u>

      On November 22, 2023, Dr. Ing completed a mental impairment residual functional capacity questionnaire.  AR 1139-44.  Dr. Ing noted short term memory deficit, impaired dexterity, fibromyalgia and sleep apnea.  Plaintiff's prognosis was poor.  AR 1139; *see also* AR 1135.  She had decreased energy, difficulty thinking or concentrating, and reduced intellectual functioning.  AR 1140, 1142.  Dr. Ing noted marked deficiencies in understanding, remembering, or applying information; and marked difficulties in maintaining concentration, persistence or

pace. AR 1143. Dr. Ing anticipated that Plaintiff's impairments or treatment would cause her to be absent more than two days per month. AR 1144.

For skilled work such as Teacher Aide I (AR 30), Dr. Ing opined that Plaintiff would be unable to meet competitive standards in understanding, remembering and carrying out detailed instructions; dealing with stress; and interacting appropriately with the public due to her short-term memory deficit and mental fog. She would be able to set realistic goals, make plans independently of others, and maintain socially appropriate behavior. AR 1142.

For unskilled work, Plaintiff would be unable to meet competitive standards in maintaining regular attendance; being punctual; understanding, remembering, and carrying out simple instructions; maintaining attention for two-hour segments; sustaining an ordinary routine without special supervision; performing at a consistent pace without an unreasonable number and length of rest periods; and dealing with normal work stress due to diffuse arthralgias, myalgias, dizziness, and imbalance. She would be moderately limited in her ability to make simple work-related decisions and respond appropriately to changes in a routine work setting. AR 1141.

On July 17, 2023, Plaintiff reported to Dr. Ing that she had flares of feeling depleted and drained, and that her memory was not as good. AR 650. Dr. Ing initiated adrenal assist to help adrenal function and ordered labs to investigate Epstein-Barr virus (EBV) reactivation in light of Plaintiff's symptoms. AR 654. On October 24, 2023, Plaintiff was noted to have elevated EBV IgG titers >600. AR 1128.

The ALJ discounted Dr. Ing's opinions dated November 22, 2023 due to the lack of (a) objective findings to support the opinions and (b) treatment or rehabilitative therapy for such cognitive impairments. AR 23. Based on the administrative record, the ALJ's reasoning is supported by substantial evidence as of the date of the ALJ's decision roughly two months later, on January 31, 2024.

After the date of the ALJ's decision, however, Plaintiff was referred for an EEG based on transverse myelitis and memory impairment. AR 37. On June 6, 2024, Plaintiff had an abnormal EEG in awake, drowsy, and sleep states. Plaintiff had intermittent regional dysfunction in the left greater than right temporal region, and rare left temporal sharps. Plaintiff had intermittent sharply contoured slowing over the left frontotemporal region and poorly formed sharps maximal over the left temporal, T1 area. The report noted that focal slowing and sharps could relate to an underlying structural abnormality. AR 37. On March 22, 2024, Dr. Cheng recommended cognitive testing based on Plaintiff's difficulty with word finding and memory. AR 59.

Although the post-decision medical records may not be complete, it is entirely possible that Plaintiff's impairments had progressed to the point of being disabling as of November 2023 and will ultimately meet the 12-month duration requirement. 20 C.F.R. § 404.1509. *See Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010). This possibility does not warrant remand because the 12-month requirement had not been met as of the date of the ALJ's decision on January 31, 2024, which is the decision reviewed by this court under 42 U.S.C. § 405(g).

Plaintiff argues that her mental impairments date back to July 7, 2022, over one year before the ALJ's decision on January 31, 2024. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Attmore*, 827 F.3d at 875. The ALJ could reasonably infer that the prior mental evaluations on July 7, 2022 and February 14, 2023 did not indicate the severity of limitations opined by Dr. Ing in November 2023. On July 7, 2022, Plaintiff reported that she has a bachelor's degree in psychology and is able to handle activities of daily living such as grooming, washing the dishes, doing the laundry, keeping appointments, exercising, shopping, and preparing a meal. AR 601. On mental status examination, she was able to build rapport easily; her speech was normal in rate, volume, and tone; her thought process was logical, organized and coherent; she had no apparent impairment in

receptive and expressive language; and her concentration, persistence, and pace were within normal limits. Her memory was intact. She remembered 3/3 items immediately and 2/3 items after three minutes, and could perform serial 3s. AR 601-02. On testing, Plaintiff had little interest or motivation to perform well, and she gave up on tasks easily. The evaluator opined that Plaintiff put forth enough effort to make the results "reasonably reliable." AR 602. Plaintiff had a full scale IQ of 71, which is within the borderline area of intellectual functioning. AR 602-03. Nevertheless, the evaluator concluded that "[h]er clinical presentation is suggestive of a higher IQ score than these findings report." AR 603. The evaluator opined that Plaintiff was not impaired in her mental functioning for work activities except for mild impairment in her ability to deal with stress. AR 603. On February 14, 2023, Plaintiff reported playing online Scrabble and participating in Zoom meetings for spiritual book studies. AR 618. Plaintiff presented with slowness in processing things and identifying words. Her speech had a slightly lower rate and rhythm. Her thought processes were linear and goal-directed, and there was no evidence of auditory or visual hallucination or delusion. She remembered 3/3 items immediately and 2/3 items after five minutes. She could do serial 7s until 37 [sic]. She remembered the current president but not the two previous ones. AR 618-19. Plaintiff was assessed as having mild difficulties. AR 620.

### D. **Past Relevant Work**

At step four of the sequential analysis, the claimant has the burden of showing that she can no longer perform past relevant work. "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ must compare the claimant's residual functional capacity ("RFC") with the physician and mental demands of the claimant's past relevant work as actually or generally performed. *Id.* at 845; 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The RFC is a determination of

"'the most [the claimant] can still do despite [the claimant's] limitations." *Treichler v. Comm'r*, 775 F.3d 1090, 1097 (9th Cir. 2014) (citation omitted).

The ALJ found that Plaintiff can perform her past relevant work as Teacher Aide I only as generally performed. (Dictionary of Occupational Titles ("DOT") 099.327-010.) The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto*, 249 F.3d at 845. The DOT categorizes Teacher Aide I as light, skilled work. AR 91. The ALJ agreed that Plaintiff could not perform her past relevant work as a Teacher Aide I as she actually performed it. AR 30.

As discussed above, the vocational expert testified that a claimant's use of a cane is not disabling because the job of Teacher Aide I can be performed with one arm/hand as generally performed. AR 94. Dr. Chuang opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently with her "free hand." AR 626.

In a March 2024 submission to the Appeals Council, Plaintiff stated that she uses her right hand to hold the cane. AR 362. Plaintiff testified at the November 29, 2023 hearing that she uses a cane to walk. AR 80. Based on the medical records, Plaintiff first reported using a cane "at times" in November 2022. AR 901, 912; AR 951-52 (using a cane to walk after sitting for prolonged periods in November 2022). At the February 2023 consultative orthopedic examination, Dr. Chuang observed that Plaintiff uses a cane to ambulate more than six feet with a slow gait but could walk without a cane for a shorter distance.[4] AR 623-24, 784-85. At that time, both of Plaintiff's legs had mild weakness at 4+/5, and Plaintiff's left arm had moderate weakness at 4/5 versus mild weakness of the right arm at 4+/5. Grip strength was weaker with the left hand (10 pounds) versus the right hand (24 pounds). AR 625.

---

[4] Prior medical records do not indicate use of a cane. At the July 6, 2022 consultative internal medicine examination, Plaintiff had a normal gait, did not require a cane to walk, and had motor strength of 5/5 in all extremities. AR 595-96; *see also* AR 951-52 (October 2022 treatment note indicating "some balance issues where she just feels more clumsy" but no indication of cane).

Plaintiff contends that the ALJ erred in failing to recognize the apparent conflict between the vocational expert's testimony that she could perform her past relevant work of Teacher Aide I, which is categorized as light work, and her need to use a cane with her right hand for walking more than six feet.

To the extent Plaintiff argues that the ALJ erred in failing to resolve an apparent conflict between the vocational expert's testimony and the DOT description of the Teacher Aide I job, Plaintiff has not shown error. When there is an apparent conflict between a vocational expert's testimony and DOT job requirements, the ALJ is required to reconcile the inconsistency. *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016); *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). The conflict must be obvious or apparent. "This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez*, 844 F.3d at 808.

The vocational expert testified that the DOT does not address the use of a cane, and her testimony about the ability to do the job of Teacher Aide I was based on her area of expertise. AR 94. According to the DOT, the Teacher Aide I performs any combination of the following tasks in a classroom to aid teaching staff in an elementary or secondary school: "Discusses assigned teaching area with classroom teacher to coordinate instructional efforts. Prepares lesson outline and plan in assigned area and submits outline to teacher for review. Plans, prepares, and develops various teaching aids, such as bibliographies, charts, and graphs. Presents subject matter to students, utilizing variety of methods and techniques, such as lecture, discussion, and supervised role playing. Prepares, administers, and grades examinations. Assists students, individually or in groups, with lesson assignments to present or reinforce learning concepts. Confers with parents on progress of students. May specialize in single subject area. May be required to have completed specified number of college education credits." DOT 099.327-010. Plaintiff has not identified any apparent or obvious conflict. It is not apparent or obvious that the Teacher Aide I job tasks involving preparation could

not be performed while sitting such that Plaintiff would not require a cane and could use either hand for reaching, handling, or fingering. The two categories of tasks involving presenting subject matter to students or assisting students with lesson assignments may involve standing or walking, but it is not apparent that these particular tasks would require more than occasional reaching. See *Gutierrez*, 844 F.3d at 808 (noting no apparent conflict between cashier job tasks and restriction on overhead reaching; ALJ's duty to follow up does not extend to "unlikely situations or circumstances").

That said, it is entirely possible, as discussed above, that Plaintiff's mental and/or physical impairments had progressed to the point of being disabling as of November 2023, consistent with Dr. Ing's opinions, and will ultimately meet the 12-month duration requirement. 20 C.F.R. § 404.1509. Again, the court does not remand the matter because the 12-month requirement had not been met as of the date of the ALJ's decision on January 31, 2024, which is the decision reviewed by this court under 42 U.S.C. § 405(g).

### E. Subjective Allegations

"'An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (citation omitted). "At this step, the medical evidence need not corroborate the severity of the alleged symptoms; the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Id.*

"Then, provided 'there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* at 1112 (citation omitted). The Ninth Circuit requires that the ALJ "'specify which testimony she finds not

credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.'" *Id.* (citation omitted). "'An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking.'" *Treichler*, 775 F.3d at 1106 (citation omitted).

The ALJ found that Plaintiff's impairments could reasonably be expected to cause symptoms but that Plaintiff's statements about the intensity, persistence, and limited effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 25.

The court does not separately address this issue because it is duplicative of the analysis of the medical source opinions and the past relevant work. Plaintiff's subjective testimony is consistent with the medical records as of November 2023 and she is likely unable to perform her past relevant work even as generally performed as of November 1, 2023. Again, the court does not remand the matter because the 12-month requirement had not been met as of the date of the ALJ's decision on January 31, 2024, which is the decision reviewed by this court under 42 U.S.C. § 405(g).

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed without prejudice to a determination of an onset date in or around November 2023 in connection with a subsequent application for benefits.

DATED: September 29, 2025

_____
ALICIA G. ROSENBERG
United States Magistrate Judge